### HAIGHT v. HAIGHT et al.

#### (Supreme Court, Trial Term, Dutchess County. April, 1908.)

1. WILLS—UNDUE INFLUENCE—EVIDENCE.

Testator disinherited a son, made a favorite daughter the principal beneficiary, and gave to his present wife substantially what the law would have given her in case of his death intestate. The son had taken offense at testator's marriage, and had declared in a letter that he would cut loose from testator. Held, that the will itself did not appear unnatural, and was not evidence that it was procured by undue influence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 429.]

2. SAME.

Evidence of events occurring prior to and at the execution of a will held not to show that the will was procured by undue influence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 421–437.]

3. SAME—NATURE OF UNDUE INFLUENCE.

A will executed by one having testamentary capacity and a knowledge of the contents thereof, and while surrounded by the guards prescribed by

statute to prevent fraud and imposition, can be avoided only by influence amounting to force or coercion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 375–381.]

4. SAME—BURDEN OF PROOF.

The burden of proving that a will executed by one having testamentary capacity and a knowledge of the contents thereof, and while surrounded by the guards prescribed by the statute was procured by undue influence, rests on the party alleging it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 389.]

5. SAME—EVIDENCE.

Evidence of the conduct of the wife of testator, subsequent to the execution of his will and during his last illness, *held* insufficient to justify the jury in finding that the will was procured by her undue influence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 421–437.]

Action by Robert G. Haight against Weltha B. Haight and others, to determine the validity of the will of William H. Haight, deceased, after the same had been admitted to probate by the surrogate. There was a verdict for plaintiff. Heard on motion for new trial. Granted.

Wood & Wood, for plaintiff.

Allison Butts, Charles Morschauser, and Samuel H. Brown, for defendants.

MILLS, J. This is an action, under section 2653a of the Code of Civil Procedure, to determine the validity of the last will and testament of William H. Haight, deceased; the same having been admitted to probate by the surrogate of Dutchess county September 12, 1906. At the trial the validity of the will was contested both upon the ground of want of testamentary capacity and upon the ground of undue influence claimed to have been exerted by the defendant, the widow of the deceased. Both issues were submitted to the jury. Their verdict was in favor of the plaintiff on the ground of undue influence, leaving it to be inferred that they found that the decedent was of testamentary capacity when he executed the will. The defendants thereupon made a motion upon the minutes for a new trial, upon the ground, among others, that the verdict finding that the will was produced by undue influence was contrary to the weight of evidence. The various counsel, having taken ample time to prepare briefs, have submitted them, and the court has carefully examined the various decisions cited therein, and also read the portions of the stenographer's minutes which were submitted with the briefs, and which it is claimed contain at least all the direct evidence tending to show undue influence.

There is no claim made that the evidence in any way tends to show that the defendant Meda Pennock, a daughter of the testator by a former wife and the principal beneficiary under the will, exerted any undue influence upon him to produce the will. The claim made and urged by the plaintiff is that the widow, the decedent's last wife, Weltha Ackley Haight, did exert such influence upon him, and thereby caused him to make the will as it was made. The question to be determined, therefore, in deciding this motion, is whether or not it was against the weight of evidence for the jury to find that the will was the product of undue influence by her exerted upon the testator. After giving the matter careful consideration, I find my mind firmly

convinced that the finding of the jury, to the effect that the will was produced by undue influence, was contrary to the weight of the evidence, and that, therefore, the verdict, based upon such finding, should not be permitted to stand. The evidence, either uncontradicted or by its great weight where conflicting, appears to me to have clearly established the following material facts:

The will was executed on the day of its purported date, viz., December 23, 1904. The testator was then about 64 years of age, and his mental and physical health was substantially unimpaired. Indeed, for nearly a year after that date he continued to personally attend to his various and somewhat numerous business affairs, and conducted them with substantially his usual energy, skill, and success. He had been throughout life a very active man, by his personal efforts accumulated a fortune of about $70,000, and had always been of strong will and masterful disposition, not much regardful of the opinion of others. At the time of the execution of the will, if in fact he were suffering from the malady, Bright's disease, from which he died on the 31st of July, 1906, neither his physician nor he was then aware of the fact, and the disease must have been in its incipient stages. The will was drafted at the office of his attorney, upon his personal dictation as to matters of substance. The evidence indicates that the lawyer's part or counsel in the matter went only to the phraseology or form of the will; that is the manner of carrying out the testator's declared purposes. The will also was executed at the office of the attorney. The testator himself personally selected and invited the witnesses to the will, who were both old friends and associates of his; the one being his physician, and the other one of his oldest and most esteemed business and personal friends. The wife was not present at the attorney's office upon any occasion in connection with the preparation or the execution of the will. Neither of the witnesses was a person in any way connected with or interested in her. There is no evidence to show that she in any manner dictated, solicited, or even advised any of the provisions of the will. The terms of the will indicate that the decedent had well in mind the details of his property, and had come to a complete and somewhat complex plan for its disposition, which contemplated some recognition, at least, of each one of the natural objects of his bounty.

Under all the circumstances, the provisions of the will do not appear unnatural, or such as to offend the sense of natural justice. The plaintiff, the only son, was substantially disinherited. As human nature goes, he (the son) had, however, afforded his father, the testator, abundant cause for such disinheritance in the extremely unfilial, bitter, abusive, and even cruel expressions of and towards his father, which he had used repeatedly and deliberately in letters written by him to the father, and which he had repeated openly and publicly, for a considerable period of time, to many, or at least several, people in the city of Poughkeepsie, some of whom had reported to the father the expressions so used by the son. Two such letters, one dated September 8, 1903, more than a year before the will was made, and the other May 11, 1905, some months after the making of the will, were put in evidence. The plaintiff, the son, testified as a witness in his own be-

half, and, while being cross-examined in reference to the expressions contained in the two letters, exhibited no sentiment of regret, but even declared that there were 50 such letters, which he had written to his father. At the time of writing such letters and making such declarations the son was about 40 years of age and appears to have acted with complete deliberation and determined purpose. He took great umbrage at the marriage of Mrs. Ackley by his father in 1903, and after that event appears to have separated himself from his father entirely, so far as he could. In one of the two letters in evidence he went so far as to declare, referring to his father:

"I cut clean and clear loose from you both [for] this world and the next."

To the father's physician, Dr. Borst, he declared:

"That the old man (meaning his father) could go to hell with his property. He (the son) did not want any of it. That in ten years he would be worth more than the old man was."

It is true that the son, as a witness, denied using the last expression to Dr. Borst; but the same seems quite in harmony with the admitted expressions used in the letters. How a son, of adult and mature age, who had deliberately and repeatedly used such expressions of and to his father, could expect anything from the father short of disinheritance, passes comprehension.

It is clear that the daughter, Meda, who is the principal beneficiary under the will, was the testator's favorite child. She was the daughter of his second wife, who was perhaps the most cherished by him of his several wives, and who had died in the matrimonial relation with him. Meda had, although reluctantly, yet without much delay, acquiesced in his marriage with Mrs. Ackley, and accepted her as a stepmother, and gone to reside with her and him.

The provisions of the will for the wife, the present widow, construed most favorably to her, are not very much better than what the law would give her in case her husband had died intestate.

Upon the whole, there seems to be nothing in the leading provisions of the will which substantially offends one's sense of natural justice. As the evidence stood, revealing events occurring at and prior to the execution of the will, it seems clear that there was no substantial evidence, direct or circumstantial, to show that Mrs. Ackley Haight exerted any influence, due or undue, upon the decedent to produce the making of the will or any of its provisions. As was said by the Appellate Division of this Department in Matter of Nelson's Will, 97 App. Div. 212, at page 217, 89 N. Y. Supp. 865, at page 868, the case here—

"is one where the testator had testamentary capacity, a present knowledge of the contents of the will, and where at its execution he was surrounded by all the guards which the statute has prescribed to prevent fraud and imposition. A will executed under these circumstances can be avoided only by influence amounting to force or coercion, and proof that it was obtained by this coercion. The burden of proving it is upon the party who makes the allegation."

It is manifest, I think, that the events occurring at or prior to the execution of the will, as proven, do not meet such burden. It remains

to consider the effect of the subsequent events, as the jury might find them established by the evidence.

In the winter of 1905, and 1906, a year after the execution of the will, the testator became conscious of failing health and went South. He returned in the early spring of 1906, a decidedly sick man—indeed, quite far gone with Bright's disease. The wife, then, in April, 1906, took strong and even extreme measures to prevent the plaintiff from seeing his father at the latter's home in Poughkeepsie, where the son called and asked to see him. In short, the evidence clearly shows that at that time, and later in July, at a sanitarium in Stamford, Conn., where the testator was then stopping, she exercised strong dominance over the testator, and did, at their home in Poughkeepsie in April, actively prevent the plaintiff from seeing his father, and in July, at the sanitarium, attempted to prevent him from seeing his father, and that there, after the son had, on the 4th of July, succeeded in seeing his father, she directed the doctor in charge not to permit the plaintiff to see his father again under any circumstances, and gave to such doctor, as a reason for excluding the plaintiff from seeing his father, the fact that she feared that he (the plaintiff) would have him (the father) "sign some paper which might make a difference in his disposal of his effects." A few days later, when the plaintiff came again to the sanitarium and succeeded in getting into his father's presence, she resorted to force even to prevent him from having any opportunity to talk with his father. In a few days she took the decedent back to their home at Poughkeepsie, declaring to the same doctor that "she was going to get him where she could control his visits," and again that "when she got him home in Poughkeepsie, if Robert Haight (meaning the plaintiff) attempted to see his father, that she would scald him with hot water if he attempted to get near the house."

The evidence, indeed, was quite sufficient to warrant the jury in finding that at that period, from April to July, 1906, inclusive, the wife exercised a strong dominance over the husband, the testator. If the will had been made during that period, or when the condition of the testator was the same as it was then, the evidence of her conduct at that period would be amply sufficient to uphold the finding of the jury that the will was produced by her undue influence. The difficulty with sustaining the verdict lies in the fact that the will was made about a year and a half before that period, and when the testator was in no such condition of broken health, mental and physical, but, on the contrary, was substantially in full possession of his normal powers, mental and physical. Under those circumstances, it does not seem to me that the evidence of her acts of dominance during that later period, just prior to the testator's death, was sufficient to warrant the jury in finding that the will was the product of her undue influence. It may well be that her motive in so acting at that time was merely to prevent the plaintiff from unduly and improperly influencing the testator in his then admittedly weakened condition, simply because she considered him then too weak to resist importunity, and therefore actually needing protection.

The motion to set aside the verdict and for a new trial is therefore granted.